IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FIFTH DIVISION

UNITED STATES OF AMERICA,
THE STATE OF MINNESOTA, and
THE STATE OF WISCONSIN,

Plaintiffs,

v.

XIK, LLC,
HONEYWELL INTERNATIONAL, INC.,
and DOMTAR, INC.,

Defendants.

Case No. 0:17-cv-02368-WMW-LIB
Hon. Wilhelmina M. Wright

**UNITED STATES' UNOPPOSED MOTION**
**FOR ENTRY OF CONSENT DECREE**

On June 29, 2017, the United States, the State of Minnesota, and the State of Wisconsin filed a complaint [Dkt. 1] in this matter against XIK, LLC; Honeywell International, Inc.; and Domtar, Inc. (collectively, the "Defendants"), pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9607 ("CERCLA"), seeking recovery of damages for injury to, loss of, or destruction of natural resources resulting from releases of hazardous substances by the Defendants into the environment at the St. Louis River / Interlake / Duluth Tar Superfund Site ("SLRIDT Site" or "Site") located in Duluth, Saint Louis County, Minnesota and Douglas County, Wisconsin, and recovery of their un-reimbursed costs of assessing such damages.

On the same day, the United States filed a *Notice of Lodging of Proposed Consent Decree* [Dkt. 2] with this Court and lodged a proposed Consent Decree [Dkt. 2-1] pending public

notice and comment on the proposed Consent Decree and attached draft Restoration Plan / Environmental Assessment ("RP/EA"). The 30-day period for public comment expired on August 7, 2017. The United States did not receive any comments on the proposed Consent Decree during the public comment period. The Trustees for natural resources received two comments on the proposed RP/EA – both favorable. The United States continues to believe that the proposed Consent Decree is fair, reasonable, and fully consistent with the purposes of CERCLA.

The United States now requests that the Court approve and enter the Consent Decree.

## Background

### The St. Louis River / Interlake / Duluth Tar Site

The SLRIDT Site is primarily located within the West Duluth neighborhood of the City of Duluth, on the north bank of the St. Louis River, approximately four river miles upstream from Lake Superior. The Site includes approximately 262 acres of land and river embayments, wetlands, and shipping slips, including Stryker Bay. A small portion of the Site (approximately 1.4 acres) is within the State of Wisconsin. The SLRIDT Site has been used for industrial purposes since at least the 1890s. Plaintiffs alleged in their Complaint that each of the Defendants was a successor-in-liability to an entity that had engaged in industrial activity (iron and/or tar production) at the Site during the first part of the 20th Century.

Contaminated wastewater discharges from historic industrial activity were the primary source of sediment contamination at the SLRIDT Site. In 1979, the Minnesota Pollution Control Agency ("MPCA") detected polynuclear aromatic hydrocarbon ("PAH") compounds in Stryker Bay sediments. PAHs are a group of carcinogenic and noncarcinogenic compounds formed during the combustion of coal, oil, gas, wood, and other substances. At the SLRIDT Site, PAHs

were generated as a by-product of high-temperature coking of coal, the distillation of crude tar, and the production of manufactured gas. PAHs are hazardous substances under the State and Federal Superfund laws.

The SLRIDT Site was placed on the Minnesota Permanent List of Priorities (the State superfund list) with MPCA acting as the lead cleanup agency.[1] The releases and threatened releases of hazardous substances identified at the SLRIDT Site were grouped into three Operable Units ("OUs") for purposes of conducting investigation and response actions: the Tar Seeps OU, the Soils OU, and the Sediments OU. The Tar Seeps OU and Soils OU were addressed by the Defendants during the 1990s. The Sediments OU included approximately 450,000 cubic yards of sediment that exceeded MPCA standards for sediment quality. In 2004, MPCA-issued a Record of Decision ("ROD") setting a dredge/capping hybrid as the remedial action to address the sediment contamination. Following a pilot capping project conducted in 2004, further remedial action took place from 2006 to 2011 to implement the 2004 ROD. Some remedial work continues today at the various Site OUs to address more recently identified contamination.

**NRDA Activity**

Under the authority of CERCLA and the Clean Water Act, the United States Department of the Interior ("DOI") has issued natural resource damage assessment and restoration ("NRDAR") regulations to guide trustees for natural resources in the evaluation of natural resource injuries and assessment of damages necessary to restore, replace, or acquire the equivalent of natural resources to a condition where they can provide the level of services

[1] In 1983, U.S. EPA evaluated the SLRIDT Site and the St. Louis River/U.S. Steel site (located on the St. Louis River an additional four river miles upriver from the SLRIDT Site) and added them as a single site to the National Priorities List ("NPL"). The federally listed site is referred to as the St. Louis River/Interlake/U.S. Steel site. Although the two sites are listed as one on the NPL, they are listed separately on the Minnesota Permanent List of Priorities.

available at baseline. *See* 43 C.F.R. Part 11. The trustees for natural resources at the SLRIDT Site are the National Oceanic and Atmospheric Administration ("NOAA"), DOI, the Minnesota Department of Natural Resources ("MDNR"), MPCA, the Wisconsin Department of Natural Resources, the Fond du Lac Band of Lake Superior Chippewa, and the 1854 Treaty Authority (governed by the Bois Forte and Grand Portage Bands of Lake Superior Chippewa) (collectively, the "Trustees").

In compliance with the DOI NRDAR regulations, the Trustees have evaluated site data, assessment data, and applicable reports and published studies, and determined that natural resources have been exposed to hazardous substances released from industrial facilities at the SLRIDT Site. The Trustees have further determined that select categories of natural resources have been injured as defined by the regulations, and that these injuries resulted in distinct losses of ecological services, recreational fishing opportunities, as well as tribal use and cultural services. The Trustees and/or their technical representatives subsequently met, consulted, and conferred with the Defendants to discuss natural resource injury data and potential restoration projects at the Site.

**The Restoration Plan and Environmental Assessment**

The Trustees then developed the draft RP/EA that is an attachment to the proposed Consent Decree. The purpose of the RP/EA is to describe how the Trustees will utilize the funds obtained through the proposed resolution of claims for natural resource damages for the restoration of natural resources and services injured by the release of hazardous substances at the SLRIDT Site.

Consistent with the NRDAR regulations and the National Environmental Policy Act, the Trustees evaluated a suite of alternatives for conducting the type and scale of restoration

sufficient to compensate the public for natural resource injuries and service losses. Based on selection factors including location, technical feasibility, cost effectiveness, provision of natural resource services similar to those lost due to contamination, and net environmental consequences, the Trustees identified a preferred alternative: the Trustees would conduct shallow sheltered embayment enhancement/restoration at Kingsbury Bay, which includes recreational access and cultural education opportunities; implement watershed protection at Kingsbury Creek; and restore wild rice in the St. Louis River estuary.

Kingsbury Bay is a 70-acre shallow sheltered embayment adjacent to, but separate from, the SLRIDT Site. It is a focus area for ecological, cultural, and recreational restoration under the Trustees' preferred alternative. This area has experienced sedimentation due to erosion problems on Kingsbury Creek, that are adversely impacting the ecological services provided by Kingsbury Bay, eliminating aquatic habitat, and encouraging the growth of monotypic stands of cattail within the bay. Together, the Kingsbury Bay and Kingsbury Creek projects would develop and protect open water habitat; create access and recreational opportunities to the bay; create opportunities for wild rice regeneration; and protect the Kingsbury Bay restoration by reducing sediment washing into the bay from Kingsbury Creek. In addition, wild rice restoration would be implemented in areas slated for wild rice restoration under the Wild Rice Restoration Implementation Plan for the St. Louis River Estuary. This wild rice restoration would be conducted in collaboration with cultural educational opportunities, such as constructing displays that communicate the importance of wild rice to the health of the St. Louis River estuary and maintaining the cultural traditions of local tribes.

**Proposed Consent Decree**

Under the proposed Consent Decree, Defendants will pay $4.1 million within 30 days of the Court's approval of the Decree, followed by a second $4.1 million payment within one year of that date. Of the initial payment, $1,723,258 will be directed to DOI, NOAA, and Minnesota to reimburse past assessment costs. The remainder of the first payment and the entirety of the second payment will be placed in DOI's NRDAR Fund to fund the projects identified in the RP/EA.

**Public Comments and Finalization of RP/EA**

In its *Notice of Lodging of Consent Decree* [Dkt. 2], the United States advised the Court that, in accordance with the procedures set forth in CERCLA Section 122(d)(2) and 28 C.F.R. § 50.7, the public would be provided an opportunity to comment on the proposed Consent Decree and that after the conclusion of the public comment period, the United States would either notify the Court of its withdrawal of consent to the proposed settlement agreement or move this Court to enter the Decree.

The United States published notice of the proposed Consent Decree and draft RP/EA in the *Federal Register* on July 6, 2017. 82 Fed. Reg. 31351. No comments were submitted by the public on the proposed Consent Decree during the 30-day public comment period. Two comments were submitted on the draft RP/EA. The Minnesota Land Trust submitted a positive comment stating that it "supports the draft RP/EA as published." Ms. Carol Reschke of the University of Minnesota Duluth, Natural Resources Research Institute likewise provided a supportive comment, stating that she believes the "three restoration projects [in the draft RP/EA] will be an excellent way to utilize funding from the SLRIDT NRDAR towards the goal of restoring fish and wildlife habitat in the St. Louis River estuary." Ms. Reschke also noted the

importance of a thorough monitoring plan for the restoration projects, which the Trustees will develop in each project's work plan consistent with the monitoring framework described in the RP/EA.

Having reviewed the public comments on the draft RP/EA, the Trustees have now prepared a draft Final RP/EA without making any substantive changes to the preferred alternative identified in the document. The draft Final RP/EA is attached as Exhibit 1 hereto. If the Court approves and enters the Consent Decree, the Trustees will issue the attached draft Final RP/EA as a Final RP/EA and will implement the preferred alternative described in the document. The public comments are included in full at Appendix F to the RP/EA and addressed in Chapter 8: Public Comments and Trustee Responses. *See* Ex. 1 at 81 and F2-F5. Following its review of the comments received, the United States continues to believe that the proposed Consent Decree (and attached RP/EA) are fair, reasonable, and fully consistent with the purposes of CERCLA.

**Court Review of Proposed Consent Decree**

The legislative history establishes that a court's role in reviewing a settlement under CERCLA is to "satisfy itself that the settlement is reasonable, fair, and consistent with the purposes that CERCLA is intended to serve." *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 85 (1st Cir. 1990), quoting H.R. Rep. No. 253, 99th Cong., 1st Sess., Pt. 3, at 19 (1985); *see also United States v. George A. Whiting Paper*, 644 F.3d 368, 372 (7th Cir. 2011) ("[T]he district court must approve a consent decree if it is reasonable, consistent with CERCLA's goals, and substantively and procedurally fair."); *United States v. Hercules, Inc.*, 961 F.2d 796, 800 (8th Cir. 1992) ("[D]istrict court reviews a proposed consent decree for fairness, reasonableness, and adequacy."). This standard of review is consistent with the standard of review that pertains to settlements generally. *See Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th

Cir. 1975) (settlements must be "fair, reasonable, and adequate"); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988) (same).

There is a presumption in favor of voluntary settlements. *United States v. AKZO Coatings of America*, 949 F.2d 1409, 1436 (6th Cir. 1991). And the policy encouraging settlements "has particular force where, as here, a government actor committed to the protection of the public interest has pulled the laboring oar in constructing the proposed settlement." *Cannons*, 899 F.2d 79, 84, citing *F.T.C. v. Standard Financial Management Corp.*, 830 F.2d 404, 408 (1st Cir. 1987). In making its determination regarding a proposed settlement, the Court should "pay deference to the judgment of the government agency which has negotiated and submitted the proposed judgment." *Securities & Exchange Comm'n v. Randolph*, 736 F.2d 525, 529 (9th Cir. 1984); *see also George A. Whiting Paper*, 644 F.3d at 372.

The settlement set forth in the proposed Consent Decree is consistent with the criteria set forth above.

## Argument

### A. The Consent Decree Is Fair, Reasonable, and Consistent With Statutory Goals

#### 1. The Consent Decree Is Fair.

In determining whether a proposed settlement is fair, a court need only ascertain whether the terms of the proposed consent decree reflect a reasonable compromise of the litigation. *See United States v. Montrose Chem. Corp.*, 50 F.3d 741, 747 (9th Cir. 1995). As part of this analysis, courts consider "the strength of the plaintiffs' case, the good faith efforts of the negotiators, the opinions of counsel, and the possible risks involved in litigation if the settlement is not approved." *United States v. Hooker Chem. & Plastics Corp.*, 607 F. Supp. 1052, 1057 (W.D.N.Y. 1985), *aff'd*, 776 F.2d 410 (2d Cir. 1985). Here, the settlement embodied in the

Consent Decree is the result of good-faith, arms-length bargaining between attorneys for the Plaintiffs and Defendants.  After a careful analysis of the strengths and risks of litigation, the Parties arrived at a settlement that appropriately estimates costs associated with conducting projects to restore or replace natural resources injured, lost, or destroyed by releases of PAH compounds to the River.  In exchange, Defendants obtain resolution of the matter and avoid costly litigation of the Plaintiffs' claims.

The fairness of the proposed Consent Decree is also inherent in the process by which the settlement was reached.  The Parties engaged in extensive negotiations over the course of a number of years, which were carried out in face-to-face meetings as well as conference calls.  They exchanged several letters and consent decree drafts.  Throughout these negotiations, Defendants were represented by experienced counsel well-versed in environmental law and procedure.

The proposed Consent Decree reflects the Parties' careful and informed assessment of the relative merits of each other's claims and defenses, while taking into consideration the costs and risks associated with litigating what would be a complex case.  Avoiding litigation benefits all Parties and spares the resources of the Court.  *See Cannons*, 899 F.2d at 90 ("all too often, litigation . . . can squander valuable resources").  Not only the Parties, but also the public gains from the "saving of time and money that results from the voluntary settlement of litigation." *Citizens for a Better Environment v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983).

The settlement also embodies a measure of compromise on the part of both sides.  As with any fair settlement, the Parties benefit from the immediate resolution of the asserted claims and defenses, while foregoing the opportunity to seek unmitigated victory.  *See E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985); *Officers for Justice v. Civil Serv.*

*Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) ("Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation").

**2. The Consent Decree Is Reasonable.**

The "reasonableness" of a Consent Decree may be determined in light of whether it is technically adequate, fully compensates the public for the alleged violations, and takes into consideration the risks of litigation. *See United States v. Telluride Co.*, 849 F. Supp. 1400, 1402-03 (D. Col. 1994). When determining whether a settlement is reasonable, "the decree's likely efficaciousness as a vehicle for cleansing the environment is of cardinal importance." *Cannons*, 899 F.2d at 89. The proposed Consent Decree is more than technically adequate in that it contains specific, tailored relief in the attached RP/EA that addresses the natural resources injured, destroyed, or lost as a result of the releases of hazardous substances alleged in the Complaint. Moreover it addresses these impacted natural resources in a far shorter time than if the Parties had litigated the action.

**3. The Consent Decree Is Consistent With Relevant Statutory Goals.**

Another role of a court reviewing an environmental settlement submitted by the United States is to determine "whether the Decree comports with the goals of Congress." *Sierra Club v. Coca-Cola Corp.*, 673 F. Supp. 1555, 1556 (M.D. Fla. 1987). The primary objective of CERCLA's natural resource damages provisions is to restore, replace, or acquire the equivalent of natural resources that have been injured, destroyed, or lost. *See* 42 U.S.C. § 9607(f)(1). The Consent Decree furthers these statutory goals by addressing, without litigation delays or costs, the natural resources lost at the SLRIDT Site.

### B. The Public Comments Support Entry of the Consent Decree

In its *Notice of Lodging of Consent Decree* (Dkt. 2), the United States advised the Court that, in accordance with the procedures set forth in Paragraph 89 of the proposed Consent Decree, the public would be provided an opportunity to comment on the proposed Consent Decree and the United States would then either notify the Court of its withdrawal of consent to the proposed settlement agreement or move this Court to enter the Decree.

The United States published notice of the proposed Consent Decree and 30-day public comment period in the Federal Register on July 6, 2017. 82 Fed. Reg. 31351. During the comment period, the United States did not receive any comments on the proposed Consent Decree, while the Trustees received two comments on the RP/EA. Both comments were favorable and supported implementation of the preferred alternative set out in the draft RP/EA. Nothing in the public comments received leads the United States to alter its conclusion that the Consent Decree is fair, reasonable, and in the public interest.

## Conclusion

The settlement embodied in the Consent Decree constitutes the United States' best efforts to resolve this case fully and fairly in a manner consistent with the interests of the public. The United States continues to believe that the proposed Consent Decree is fair, reasonable, consistent with the purpose of CERCLA, and in the public interest. Minnesota and Wisconsin do support entry of the proposed Consent Decree. Pursuant to Paragraph 34 of the Decree, Defendants have consented to its entry.

THEREFORE, the United States respectfully requests that the Court enter the proposed Consent Decree.

Dated: September 29, 2017

Respectfully submitted,

UNITED STATES OF AMERICA

JEFFREY H. WOOD
Acting Assistant Attorney General
Environment and Natural Resources Division

s/ Jeffrey A. Spector
JEFFREY A. SPECTOR
Senior Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044-7611
(202) 514-4432
(202) 6l6-6584 (fax)
Jeffrey.Spector@usdoj.gov

GREGORY G. BROOKER
Acting United States Attorney
District of Minnesota
FRIEDRICH A.P. SIEKERT
Assistant United States Attorney
Atty. No. 0142013
District of Minnesota
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5697
Fred.Siekert@usdoj.gov

OF COUNSEL:

John Rudolph
U.S. Department of the Interior
Office of the Solicitor
Division of Parks and Wildlife, Branch of Environmental Restoration
1849 C Street, NW, MS-6560 MIB
Washington, DC 20240

Britta Hinrichsen
National Oceanic and Atmospheric Administration
55 Great Republic Drive
Gloucester, MA  01930

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing *United States of America's Unopposed Motion to Enter Consent Decree* was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by U.S. mail. Parties may access this filing through the Court's system.

| 9/29/17 | /s Jeffrey A. Spector |
|---|---|
| Date | Jeffrey A. Spector |